IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANA ARENAS CRUZ, | § | |
| | § | |
| *Plaintiff,* | § | SA-21-CV-01246-ESC |
| | § | |
| vs. | § | |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). On October 4, 2022, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#15], the transcript ("Tr.") of the SSA proceedings [#9], the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that no reversible legal error was committed during the proceedings, and substantial evidence supports the Commissioner's decision finding Plaintiff not disabled. The Court will therefore affirm the Commissioner's decision.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#17].

## II. Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III. Factual Background

Plaintiff Ana Arenas Cruz filed her application for DIB on July 3, 2019, alleging disability beginning May 1, 2019. (Tr. 170.) Plaintiff later amended her disability onset date to January 1, 2020. At the time of her application, Plaintiff was 57 years old and was working part-time as an Uber driver. (Tr. 170, 200, 243.) Plaintiff completed part of her high-school education and attended secretary school. (Tr. 200.) Plaintiff has past work experience in banking, having worked for Wachovia and then Wells Fargo from 1994 to 2019 in the customer service department, focusing on commercial clients. (Tr. 200, 222–23, 293.) Plaintiff stopped working due to pain in her back in 2019. (Tr. 249.)

An Adult Function Report completed at the time of her disability application indicates that Plaintiff had a cyst removed from her spinal cord, which caused nerve damage and ultimately required a spinal fusion surgery. (Tr. 242.) Plaintiff claims that she suffers from arthritis and continuous restless leg syndrome as a result of the surgery, as well as depression due to losing her ability to work in a profession she loved. (Tr. 242, 248.) Plaintiff's work history report indicates that Wells Fargo had provided her certain accommodations at work, such as a sit/stand desk and a bed in her office, but ultimately the pain made working her full-time position too difficult. (Tr. 229.) Plaintiff also stated that the muscle relaxers she took to manage her pain caused her to pass out while driving home from work on multiple occasions. (*Id.*) The medical

conditions upon which Plaintiff based her initial DIB application are major back problems, two major back surgeries, ADD, mild depression due to pain, high blood pressure, and cataracts.  (Tr. 292.)

Plaintiff's application was denied initially on April 13, 2020, and again upon reconsideration on July 30, 2020.  (Tr. 59–88.)  Following the denial of her claim, Plaintiff requested an administrative hearing.  Plaintiff and her attorney attended the administrative hearing before Administrative Law Judge ("ALJ") Gordan Momcilovic on March 10, 2021.  (Tr. 32–58.)  Plaintiff and vocational expert ("VE") Judith Harper provided testimony at the hearing. (*Id.*)  Plaintiff testified regarding her pain and restless leg syndrome from the surgical nerve damage, as well as muscle spasms and arthritis in her back.  (Tr. 45–46.)  Plaintiff stated that she is unable to stand for more than five to ten minutes at a time due to her pain and cannot sleep more than three to five hour per night, which make working full-time difficult.  (Tr. 45–47.) Plaintiff testified minimally about her depression and ADD, as the focus at the administrative hearing was primarily on her physical limitations.  (Tr. 48.)  In terms of Plaintiff's activities of daily living, she testified that she is able to cook with her husband's help, clean her house, take care of herself, shop for groceries, and even has worked with a recruiter to look for part-time work.  (Tr. 45–48.)

The ALJ issued an unfavorable decision on March 30, 2021.  (Tr. 10–22.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA through June 30, 2021, and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2020, the amended alleged disability onset date.  (Tr. 12.)  At step two, the ALJ found Plaintiff to have the severe impairments of lumbar fusion with sequela of mild-to-moderate

degenerative disc disease and post-laminectomy syndrome; NEC/chronic pain/somatic symptom disorder; and persistent depressive disorder/major depressive disorder, ADHD/ADD, and anxiety.  (Tr. 12–13.)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled.  (Tr. 13–14.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform medium work with frequent balancing and all other postural limitations performed only occasionally, and limited Plaintiff to understanding, remembering, and carrying out "detailed but not complex" job instructions and work-related tasks.  (Tr. 15–20.)  At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a taxi driver and is therefore not disabled.  (Tr. 20–21.)  The ALJ alternatively found that Plaintiff is capable of other work in the national economy, namely the work of a hand packager and order picker.  (Tr. 21.)  Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (*Id.*)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on May 11, 2021.  (Tr. 1–9.)  On December 16, 2021, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises one point of error in this appeal.[2]  Plaintiff argues that the ALJ erred in making the RFC determination as to Plaintiff's mental limitations and the RFC is not supported by substantial evidence.   Specifically, Plaintiff contends that the ALJ's limitation of Plaintiff to "detailed but not complex" job instructions is impermissibly vague and inconsistent with other

---

[2] Plaintiff's brief raised an additional issue—whether the ALJ's credibility assessment was defective—but Plaintiff withdrew this issue at oral argument.

findings, and the ALJ erred in not including any social imitations in the RFC.  None of these arguments has merit.

An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Here, the ALJ assessed Plaintiff with the RFC for medium work with certain physical limitations not at issue in this appeal.  (Tr. 15–20.)  As to mental limitations, the ALJ limited Plaintiff to understanding, remembering, and carrying out "detailed but not complex" job instructions and work-related tasks.  (*Id.*)  The ALJ did not include any social limitations in Plaintiff's RFC.  The ALJ did not commit reversible error in assessing Plaintiff's mental RFC, which is supported by substantial evidence.

As to Plaintiff's ability to follow "detailed but not complex" job instructions, Plaintiff argues the ALJ failed to create a logical bridge between his "Paragraph B" findings at step three and this aspect of the mental RFC.  The Paragraph B criteria are a list of four functional areas generally utilized for evaluating mental impairments at all levels of the administrative review

process:  the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.   20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. § Pt. 404, Subpt. P, App. 1.   At step three, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders) and made the following findings: Plaintiff has mild limitations in interacting with others and adapting and managing herself and has moderate limitations in understanding, remembering or applying information and concentration, persistence, and maintaining pace.  (Tr. 13–14.)  Plaintiff argues it is inconsistent for the ALJ to find these moderate limitations and yet also to find Plaintiff has the ability to follow "detailed but not complex" instructions.   Plaintiff also argues this aspect of the mental RFC (and the corresponding hypothetical posed to the VE at the ALJ's hearing) is impermissibly vague.  The Court disagrees.

Step three determinations and RFC determinations are distinct analyses.  Paragraph B findings "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  Although the ALJ must consider the paragraph B limitations when determining a mental RFC, he is not required to incorporate these limitations verbatim.  *See Holmes v. Astrue*, No. 3:11-cv-2634-G BH, 2013 WL 638830, at *13 (N.D. Tex. Jan. 25, 2013).  Additionally, while it is true that the mental RFC should involve a "more detailed assessment" than the Paragraph B findings, *see* SSR 96-9p, at *4, the Court rejects Plaintiff's argument that the mental RFC here is impermissibly vague or inconsistent in light of the limited mental health evidence in the record and the substantial evidence supporting the overall mental RFC.

To constitute reversible error and warrant remand, Plaintiff must show that she suffered prejudice due to the ALJ's mental RFC determination. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").  Plaintiff has not demonstrated that the ALJ's failure to incorporate the Paragraph B findings verbatim in the RFC caused her prejudice.  Stated another way, Plaintiff has not made a sufficient showing that, had the ALJ included these findings, the outcome in her DIB proceeding would have been different and more favorable.  *See Jones v. Astrue*, No. 3:11–CV–3416–M–BH, 2013 WL 1293900, at *17–18 (N.D. Tex. Mar.7, 2013), *rec. adopted*, 2013 WL 1296503 (N.D. Tex. Mar. 29, 2013) (ALJ's failure to incorporate the "exact language" of Paragraph B findings into RFC did not require remand in absence of showing of prejudice).  Nor is the lack of a social limitation in the RFC prejudicial considering the entire record in this case.

The ALJ found Plaintiff to be not disabled in part because he concluded she is able to perform her past relevant work as an Uber driver.  Due to Plaintiff's part-time work in this position during the relevant time period, the ALJ found Plaintiff's assertions that she was unable to drive to her full-time job due to side effects from her medication to lack credibility.  (Tr. 18.) The ALJ also noted repeatedly throughout his opinion that the record lacked any evidence of deterioration or decompensation in Plaintiff's mental functioning significant enough to impair Plaintiff's overall ability to work.  (*Id.*)  Rather, the medical records demonstrate that Plaintiff is under the conservative care of her primary care provider, who has provided her with medications to manage her conditions and that her overall prognosis in terms of her mental functioning is promising if she complies with her physician's treatment plan.  (*Id.*)  Plaintiff has not explained

to the Court how either of the alleged errors in the mental RFC determination would have resulted in a different conclusion by the ALJ as to Plaintiff's ability to work.

Moreover, substantial evidence supports the mental RFC determination in this case. Importantly, Plaintiff bears the burden to establish that her mental impairments cause significant limitations to her RFC resulting in disability. *Greenspan*, 38 F.3d at 239. If there is a lack of detail in the RFC determination here, it is at least in part due to the dearth of mental health evidence in the record. As noted by the ALJ, Plaintiff did not undergo any treatment from a psychiatrist, psychologist, or any other mental health provider. (Tr. 18.) The only treatment records regarding Plaintiff's mental health during the relevant time period[3] are those created by Plaintiff's primary care provider, Dr. Oscar Cerda.

Dr. Cerda treated Plaintiff throughout 2020 and diagnosed her with ADD, anxiety, and depression. (Tr. 450–505.) But aside from diagnoses and medication management, these records do not shed much light on the extent and nature of Plaintiff's mental limitations. Dr. Cerda prescribed multiple medications for Plaintiff's ADD and anxiety (which Plaintiff appeared to be taking as directed) and attempted to provide treatment for Plaintiff's depression by providing her with a "starter kit" for an antidepressant. (Tr. 526.) But Plaintiff indicated she was unlikely to comply with the antidepressant prescription, as, according to Plaintiff, her husband obstructed her ability to get treatment for her depression due to his concerns about her possible addiction to prescription drugs. (Tr. 432–34, 524–25.) (In light of Plaintiff's medication history of multiple psychiatric medications for treatment of anxiety and ADD and other physical ailments, this assertion is not particularly credible.) Dr. Cerda's single-page, check-box medical source statement does not provide any additional details as to Plaintiff's

---

[3] The relevant time period is January 1, 2020, the amended disability onset date, to March 30, 2021, the date of the ALJ's decision.

mental limitations, and the ALJ unsurprisingly found Dr. Cerda's ultimate conclusion that Plaintiff would be off task 25% or more of the workday to be unsupported by any of Dr. Cerda's own treatment records.  (Tr. 505.)

The only other records concerning Plaintiff's mental status are two consultative examinations performed in early 2020, a medical exam by Dr. Charles Clements and a psychological exam by Dr. Javier Villanueva.  (Tr. 466, 470–72.)  These records also do not provide an evidentiary basis for a more restrictive mental RFC.  Dr. Clements documented Plaintiff as having a "normal" mental status and found her to be alert and oriented with appropriate emotional effect.  (Tr. 466.)  Plaintiff presented similarly for Dr. Villanueva's exam; he found her to be cooperative, with good eye contact, and an appropriate, congruent, and euthymic mood, with no sign of anxiety and good frustration tolerance.  (Tr. 471.)  Dr. Villanueva's evaluation of Plaintiff resulted in findings that she was oriented to time, person, and place and had memory and concentration only slightly below normal limits.  (Tr. 471–72.)  Dr. Villanueva also opined that Plaintiff's condition would improve with ongoing medication management.  (Tr. 472.)  Overall, although Dr. Villanueva noted that Plaintiff was "struggling to make occupational, personal and social adjustments," he found "no significant deficits in memory or concentration noted during [his] evaluation."  (Tr. 472.)

Despite all of these findings, none of which suggest Plaintiff is severely limited in her mental functioning, Plaintiff argues there is no evidentiary basis for finding she is able to follow detailed but not complex instructions.  Yet both the State Agency Psychological Consultants (SAPCs) at the initial and reconsideration levels found Plaintiff to have this same RFC, and both the SAPCs made the same Paragraph B findings as the ALJ.  (Tr. 66, 69–70, 80, 85.)  As to Plaintiff's ability to sustain concentration and persistence limitations, the SAPCs found Plaintiff

to be moderately limited in her ability to carry out detailed instructions but not significantly limited in her ability to carry out short and simple instructions.  (Tr. 69.)  And the SAPCs both concluded Plaintiff is able to "concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting."  (Tr. 70, 85.)  Plaintiff argues that the finding that she can follow "detailed but not complex" instructions is inconsistent and vague, but it appears that both the SAPCs and the ALJ accounted for Plaintiff's moderate limitations in following detailed instructions by limiting Plaintiff to the kind of detailed instructions that are not complex.  Additionally, Plaintiff did not object to the ALJ's hypothetical to the VE at the administrative hearing on either of these grounds.  The ALJ's mental RFC is not inconsistent with his Paragraph B findings, and the ALJ was entitled to rely on the SAPCs' opinions in assessing Plaintiff's limitations.  *See* 20 C.F.R. § 404.1513(a)(1).

Plaintiff argues that the ALJ offered no rationale for crediting the SAPCs' opinions as to Plaintiff's mental limitations, and the SAPCs' findings are not particularly probative because neither SAPC had access to Dr. Cerda's later medical records when Plaintiff's mental condition was more compromised.  True, in December 2020 (months after the SAPCs evaluated Plaintiff), Dr. Cerda performed a depression screening on Plaintiff and found her to be severely depressed due to symptoms of hopelessness, poor sleep, impaired concentration, and suicidal thoughts.  (Tr. 524.)  But again, as the ALJ pointed out repeatedly in his opinion, this was just one visit from a general practitioner, not a psychologist or psychiatrist or other mental health specialist.  Additionally, Dr. Cerda provided Plaintiff with antidepressants at this same visit, and there are no subsequent mental health records in the record, aside from Dr. Cerda's one-page medical source statement—a statement the ALJ found to overstate Plaintiff's limitations and to be generally unsupported by and inconsistent with Dr. Cerda's own records.  Moreover, even

11

though the SAPCs did not have these records, the ALJ did, and he still found that Plaintiff had not established mental limitations of a disabling degree.   Plaintiff has not identified any reversible legal error as to the ALJ's decision to credit the SAPCs' opinions over other evidence of record regarding Plaintiff's mental limitations.   And, again, Plaintiff has not carried her burden to demonstrate a more restrictive mental RFC.

As for evidence regarding the need for social limitations, Plaintiff has not directed the Court to any evidence supporting anything more than mild limitations in this area.   In Plaintiff's Adult Function Report, she reported shopping for groceries three time a week, having dinner with friends, and working part-time as an Uber driver.  (Tr. 242–47.)  Plaintiff also reported to Dr. Villanueva during her consultative examination that although her social life is limited and she feels uncomfortable in public, she still socializes occasionally with friends.   (Tr. 472.) Plaintiff also testified at the ALJ's hearing that she remains in touch with her former colleagues from Wells Fargo and even was in conversation with a recruiter in an attempt to secure part-time employment.  (Tr. 49.)  Overall, Plaintiff also established a good rapport with Dr. Villanueva and Dr. Clements during the consultative exams.  (Tr. 466, 470–72.)  All of these records provide substantial evidence for the ALJ's finding that Plaintiff has only mild limitations in interacting with others.  Mild findings as to the Paragraph B criteria do not mandate the inclusion of mental limitations in the RFC, where the mild limitations do not affect the claimant's ability to do work. *Jeansonne v. Saul*, No. 20-30570, 2021 WL 1373965, at *3 (5th Cir. Apr. 12, 2021).  Substantial evidence supports the ALJ's finding that Plaintiff has only mild limitations in interacting with others and the decision not to include any social limitations in the RFC.  (Tr. 14.)

In summary, because there is substantial evidence to support the ALJ's RFC determination, and the ALJ did not commit any reversible legal error in making this determination, the Commissioner's decision that Plaintiff is not disabled should be affirmed.

## V.  Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 17th day of November, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

13